IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–02713–REB–KMT


DAVID L. HAMILTON, an individual,

      Plaintiff,

v.

EMERALD ISLE LENDING COMPANY, a Colorado corporation,
GGBC INVESTMENT PROPERTIES, LLC, a Colorado limited liability company,
STEPHEN P. GALLAGHER, individually,
HOLLY A. COOK, individually,
DAVID J. GOLDBERG, individually,
MICHAEL J. BUSHELL, individually, and
SCOTT L. CROSBIE, individually,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Defendants' Motion to Dismiss, Or in the

Alternative, Motion for Summary Judgment" (Doc. No. 23 [Mot.], filed January 7, 2011).

Plaintiff filed his response on February 7, 2011 (Doc. No. 40 [Resp.]), and Defendants filed their

reply on February 10, 2011 (Doc. No. 42 [Reply].)  Plaintiff, with leave of this court, also filed

supplements to his response on February 14 and February 18, 2011.  (Doc. Nos. 43 and 46.)  The

motion is ripe for the court's ruling and recommendation.

## I.   STATEMENT OF THE CASE

Plaintiff alleges that the defendants induced him and non-party Marquis Investments, Inc. (Marquis) into executing a $175,000.00 promissory note and to granting Defendant Emerald a deed of trust securing repayment of the note.  (*See* Doc. No. 1 [Compl.].)  Specifically, in his First and Second Claims for Relief, Plaintiff alleges that Defendants fraudulently and negligently misrepresented that loan proceeds would be disbursed to Defendants and claims that instead the loan proceeds were to be used to pay outstanding contractor bills.  (*Id.*, ¶¶ 22–34.)  In his Third Claim for Relief, Plaintiff asserts a claim that the defendants were unjustly enriched by distributions they received from Defendant GGBC in connection with GGBC's sale of the Lakewood Property described below.  (*Id.*, ¶¶ 35–43.)

In Plaintiff's Fourth Claim for Relief, he alleges that Defendant Emerald's loan to Marquis and Hamilton violated California's usury law.  (*Id.*, ¶¶ 44–47.)  In his Fifth Claim for Relief, Plaintiff alleges Defendant Emerald violated the automatic bankruptcy stay when it conducted a California private trustee sale of California property following Plaintiff's default under the note. (*Id.*, ¶¶ 48–57.)  In his First, Second, and Third, and Fourth Claims for Relief, Plaintiff seeks money damages.  (*Id.*, ¶¶ 27, 34, 43, 47.)  In his Fifth Claim for Relief, Plaintiff seeks equitable relief setting aside the Trustee's Sale.  (*Id.*, ¶¶ 55–56.)  Plaintiff then generally asserts prayers for relief in the form of a judgment awarding actual, compensatory, consequential, and treble damages; for an order setting aside the Trustee's Sale; and for an order cancelling the Trustee's Deed Upon Sale.  (*Id.* at 10.)  Plaintiff also seeks awards of interest and fees and costs.  (*Id.*)

Defendants seek dismissal on the bases that (1) Plaintiff's Complaint is barred by *res judicata* and collateral estoppel; (2) Plaintiff does not have standing to pursue claims belonging to Marquis; (3) the individual defendants are insulated from liability of their limited liability company; (4) Plaintiff's alleged misrepresentations related to the use of the loan proceeds which are "future promises" and not actionable as fraud; (5) an equitable exception to a violation of an automatic bankruptcy stay bars Plaintiff's claim in that regard; and (6) the Promissory Note is governed by Colorado usury law, not California usury law.  (*See* Mot.)

The following facts are taken from Plaintiff's Complaint and the parties' submissions with respect to this Recommendation.

### A.    *Lakewood Property*

Following is a verbatim recital of the Factual Findings regarding the Lakewood property (Lakewood Property) at issue taken from an Order entered by the Jefferson County, Colorado District Court, on September 17, 2010, in a suit by the plaintiff in that matter, Quinlan Construction, Inc. (Quinlan), against several defendants, some of whom are parties in this action. (Mot. Ex. 1.)

> On or about April 2006, Daniel Roberts, David Hamilton and Stephen Gallagher agreed to enter into a project to build, develop and sell car wash sites. Daniel Roberts operated under MCW Development, LLC, David Hamilton was the president of Marquis Investments, Inc., and Stephen Gallagher was the managing member of GGBC Investment Properties, LLC.  The agreement involved the purchase of four separate properties.  The property at issue in this action is located in Lakewood, CO.
> Under the agreement, each individual, through their respective entities, would perform a distinct function.  Marquis Investments would sell property to MCW Development who would in turn sell the property to GGBC Investment Properties.  GGBC would subsequently lease the property back to MCW with an

option to purchase.  The money obtained from the sale would be used to fund the construction of the car washes.

On or about September 12, 2005, MCW acquired the Lakewood property for approximately $590,000.  On or about September 15, 2005, MCW sold the Lakewood property to Marquis for approximately $845,000 and subsequently entered into a ground lease.  On or about December 21, 2006, Marquis entered into a contract to sell the Lakewood property to MCW for $845,535.  The sale was structured as a 1031 exchange.  Marquis loaned the proceeds of the sale to MCW for the construction of a car wash.

On or about December 20, 2006, Stephen Gallagher sent a proposed contract to MCW for the purchase of four car wash sites, including the Lakewood property, for a total of $3,510,000.  The proposed contract gave MCW an option to reacquire the Lakewood property for $970,000.

On or about December 8, 2006, MCW entered into a construction contract with Plaintiff for the construction of a car wash.  At the time the contract was signed, Marquis was the owner of the Lakewood property and MCW held a ground lease on the property.  Quinlan constructed the car wash in accordance with the construction contract.

Marquis, out of a purported construction loan of $1,900,000, actually funded $1,713,243, for the construction, based on payments made to Quinlan prior to closing and as shown on the payment summary sheet . . . .

MCW sold the property to GGBC and Stephen Gallagher on April 9, 2007 for $870,000.  On April 9, 2007, Stephen Gallagher granted an option to Marquis to purchase the property for $970,000.

During the construction phase, GGBC and Stephen Gallagher owned the Lakewood property and both Marquis and MCW were tenants under a ground lease.

On or about July 27 2007, MCW entered into a Purchase and Sale Agreement with the Culley Family Trust.  The agreement provided that the Culley Family Trust would purchase the Lakewood property for $3,000,000.  At closing, the Culley Trust paid a total of $1,100,000 in cash and executed a promissory note for $1,900,000.

After closing with the Culley Trust, MCW retroactively purchased the property from GGBC and Stephen Gallagher since MCW was not the record owner at the time of conveyance.  MCW purchased the property by exercising an option to re-purchase the property for $970,000.  In addition to the purchase price, Stephen Gallagher demanded and received a $90,000 lease cancellation fee, a $20,000 commission and $882 for four days of lease payments.

Since there were insufficient funds available to pay all of the fees demanded by Stephen Gallagher as a condition to this transfer of the property back to MCW, Marquis borrowed $145,000 from Stephen Gallagher, through

4

Emerald Isle.  This $145,000 was paid outside of the Culley closing and was referred to as an "internal payoff."

On August 2, 2007 Marquis transferred a total of $30,000 out of the construction account at Vectra Bank, through two transfers on August 2, 2007 and August 7, 2007, knowing that Plaintiff and the subcontractors had not been paid.

At the time of the Culley closing on August 31, 2007, all of the Defendants knew that there was approximately $100,000 due and owing to Plaintiff and Plaintiffs subcontractors.  Daniel Roberts disbursed or caused the disbursement of $1,080,822 to Stephen Gallagher and assigned the $1,900,000 carry back note to David Hamilton.  Daniel Roberts had previously received $255,000 profit from his purchase of the Lakewood property on or about September 12, 2005 and the subsequent sale to Marquis on September 15, 2005.

(Mot., Ex. 1 at 1–3.)

## B.    *Promissory Note*

On or about August 30, 2007, Plaintiff Hamilton and non-party Marquis executed a promissory note (Note) in favor of Defendant Emerald in the amount of $175,000.  (Mot., Ex. 3.) The Note covered GGBC's shortfall in connection with the sale of the Lakewood Property. (Compl., ¶ 16.)  As security for repayment of the Note, non-party Marquis pledged property it owned in California located at 7455 River Nine Drive, Modesto, California (California Property).  (Mot., Ex. 3, ¶ 4.)  On August 30, 2007, Marquis executed a deed of trust in favor of Defendant Emerald which encumbered the California Property and secured repayment of the Note.  (*Id.*, Ex. 4.)  The Note matured according to its terms and Defendant Emerald provided Plaintiff and Marquis with notice of the default.  (*Id.*, Ex. 5.)

## C.    *California Foreclosure*

On or about May 29, 2009, as a result of Marquis' failure to cure the default, Defendant Emerald caused a Notice of Trustee's Sale Under Deed of Trust (Trustee's Sale) to be filed by

5

the private trustee, Dual Arch International (Dual Arch) in California, for foreclosure of the California Property.  (*Id.*, Ex. 6.)  Dual Arch scheduled to sell the California Property in June 2009.  (*Id.*)

### D.     Marquis' Colorado State Case

On or about March 6, 2008, Marquis filed Counterclaims and a Third Party Complaint against some of the same defendants (Defendants Emerald, GGBC and Gallagher) Hamilton has sued in the current action alleging fraudulent misrepresentation and negligent misrepresentation regarding the Note.[1]  (*Id.*, Ex. 7.)

Prior to the Trustee's Sale, Marquis filed a Motion for Temporary Retraining Order and for a Preliminary Injunction in the Colorado State Court Case.  (*Id.*, Ex. 10.)  Marquis asserted fraudulent misrepresentation and unjust enrichment claims seeking to set aside the Note and the Emerald Deed of Trust.  (*Id.*)  On July 3, 2009, following an evidentiary hearing, the judge in the Colorado case denied Marquis' request for a preliminary injunction.  (*Id.*, Ex. 8.)  The judge specifically found that Marquis failed to demonstrate a reasonable probability of success on the merits in establishing that fraudulent misrepresentations were made in connection with the Note and Emerald Deed of Trust.  (*Id.*, Ex. 8 at 2.)

### E.     Marquis' Transfer of California Property to Cambria Ventures and the Subsequent Bankruptcy Filing

On July 6, 2009, the next business day following the Colorado court's denial of the preliminary injunction, Marquis transferred the California Property to Cambria Ventures, Inc.

---

[1]Marquis is represented by counsel in the Colorado action.  (*See* Mot., Ex. 7 at 1.)

(Cambria), another California corporation.  (*Id.*, Ex. 11.)  The Corporation Grant Deed contains the signature of David Hamilton as President of Cambria.  (*Id.*)  The Corporation Grant Deed was recorded at 9:50 a.m.  (*Id.*)  Also on July 6, 2009, at 10:19 a.m., Cambria filed a Chapter 11 Voluntary Petition in the United States Bankruptcy Court for the Eastern District of California. (*Id.*, Ex. 12.)  As reflected in the list of creditors, Cambria claimed that it had zero creditors. (*See id.*)  Emerald filed a Motion to Dismiss the Bankruptcy Petition Pursuant to 11 U.S.C. § 1112. (*Id.*, Ex. 13.)  On July 29, 2009, the Bankruptcy Court held a hearing and dismissed the bankruptcy case.  (*Id.*, Exs. 14 and 15.)

> **F.**     ***The California Property Trustee's Sale***

On July 30, 2009, following the bankruptcy court's dismissal of Cambria's Chapter 11 case, Dual Arch conducted the Trustee's Sale and issued a Trustee's Deed Upon Sale to Defendant Emerald (Trustee's Deed).  (*Id.*, Ex. 16.)

> **G.**     ***Marquis and Cambria's California State Court Complaint***

On or about August 3, 2009, Marquis and Cambria initiated a California State Court action in the Superior Court of the State of California, County of Stanislaus, seeking to set aside the Trustee's Sale and for cancellation of the Trustee's Deed.  (*Id.*, Ex. 17.)  Marquis and Cambria recorded a "Notice of Pending Action" which is the functional equivalent of a Notice of Lis Pendens.  (*Id.*, Ex. 18.)  On or about December 17, 2010, the judge in the California case granted Defendants' Motion for Judgment on the Pleadings.  (*Id.*, Ex. 20.)

### H.    The Quinlan Lawsuit Involving the Lakewood Property

On or about June 15, 2009, Quinlan named Marquis, GGBC, Hamilton, and Gallagher as co-defendants in the Jefferson County District Court Case.  (*Id.*, Ex. 21.)  The Quinlan case was tried to the Court on August 16, 2010. On September 17, 2010, the Jefferson County Court entered judgment in favor of Quinlan.  (*Id.*, Ex. 1.)

## II.    LEGAL STANDARDS

### A.    Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The *Iqbal* evaluation requires two

8

prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1940.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*,129 S. Ct. at 1949 (citation omitted).

"A 12(b)(6) motion must be converted into a motion for summary judgment if 'matters outside the pleadings are presented to and not excluded by the court' and 'all parties . . . [are] given a reasonable opportunity to present all material made pertinent to such a motion by [Fed. R. Civ. P. ] 56.' "  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th

Cir. 1997) (quoting Fed. R. Civ. P. 12(d)); *see also Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005) (holding that where the District Court relied on facts presented in affidavits, a Rule 12(b)(6) motion was properly converted into a motion for summary judgment).

Defendants' motion made pursuant to Rule 12(b)(6), or in the alternative Rule 56, references materials outside of the pleadings. Normally, if a court decides to convert a Rule 12(b)(6) motion into a Rule 56 motion, it must provide the parties with notice to avoid unfair surprise. *See Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986). Nevertheless, "when a party [references] material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion." *Wheeler v. Main Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987) (citing *Nichols*, 796 F.2d at 164). Here, Defendants moved either to dismiss or for summary judgment. Plaintiff responded and attached his own documents to his response. Consequently, unfair surprise is not an issue, and this court will treat Defendants' motion as one for summary judgment.

### B.    *Summary Judgment Standard*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgments as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a

10

genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence.  *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Concrete Works*, 36 F.3d at 1517.  Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty*, 584 F.3d 1304, 1312 (10th Cir. 2009).  "When opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## III.   ANALYSIS

### A.   **Res Judicata** *and Collateral Estoppel*

Defendants assert that this case is barred by the doctrines of *res judicata* and collateral estoppel.  Though sometimes used to refer to the narrower concept of claim preclusion, *res judicata* traditionally subsumes both claim preclusion and issue preclusion, which is sometimes called collateral estoppel.  *See e.g. Carter v. City of Emporia*, 815 F.2d 617, 619 n.2 (10th Cir. 1987).  The Tenth Circuit has stated:

> The doctrines of *res judicata*, or claim preclusion, and collateral estoppel, or issue preclusion, are closely related.  *Res judicata* generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or issues that could have been raised in the earlier action.  A claim is barred by *res judicata* when the prior action involved identical claims and the same parties or their privies.  Collateral estoppel, however, does not always require that the parties be the same.  Instead, collateral estoppel requires an identity of issues raised in the successive proceedings and the determination of these issues by a valid final judgment to which such determination was essential.

*Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995) (internal citations and quotations omitted).  "Both doctrines require that the party or parties against whom the earlier decision is asserted had a full and fair opportunity to litigate the claim or issue."  *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481 n.22 (1982)).

Federal courts are required by the full faith and credit provision of 28 U.S.C. § 1738 to give a state court judgment the same preclusive effect as it would be given under the law of the state in which the judgment was rendered.  28 U.S.C. § 1738; *see Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 519 (1986).  This Act requires federal courts to apply the *res judicata* rules of a particular state to judgments issued by courts of that state.  *Parsons Steel*, 474 U.S. at 523.  Accordingly, this court applies Colorado law of *res judicata* to the Colorado case and California law of *res judicata* to the California case.

### i.       *Colorado Case*

Under Colorado state law, *res judicata* "bars relitigation not only of all issues actually decided, but of all issues that might have been decided."  *Pomeroy v. Waitkus*, 517 P.2d 396, 399 (1974) (emphasis added); *State Engineer v. Smith Cattle, Inc.*, 780 P.2d 546, 549 (Colo. 1989).  In Colorado, *res judicata* operates as a bar to a second action where there is (1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions.  *Cruz v. Benine*, 984 P.2d 1173 (Colo. 1999).

Defendants argue that Plaintiff's First, Second, and Third Claims for Relief are currently pending in the Denver, Colorado, District Court (Denver District Court case) and that Plaintiff "cannot continue prosecuting identical lawsuits against Defendants in state court and federal court."  (Mot. at 19 [emphasis in original].)  Plaintiff does not dispute that the Denver District Court case "may have jurisdiction to reach final judgment on the issues of Plaintiff's First, Second and Third claims for relief [in this case]."  (Resp. at 15.)  However, it is clear that the Denver District Court case is ongoing and, thus, there is no finality of judgment required for a

case to be barred in this court on *res judicata* grounds.  Defendants' motion in this regard is properly denied.

### ii.  California Case

Defendants also argue that Plaintiff's Fourth and Fifth Claims for Relief are barred by *res judicata* based on the California case.  (Mot. at 20–22.)  Under California law, *res judicata* may bar an action if "(1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding."  *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles*, 126 Cal. App. 4th 1180, 1202 (Cal. Ct. App. 2004).

### a.  Fifth Claim for Relief

Plaintiff's Fifth Claim for Relief asserts Defendant Emerald violated the automatic stay imposed by 11 U.S.C. § 362.  (*See* Compl., ¶¶ 48–57.)  A review of the Complaint filed in the California case (California Complaint) reveals that the plaintiffs, Cambria and Marquis, sued certain defendants, including Emerald Isle Lending Company, seeking to set aside the trustee sale of the same property at issue in this case based on the defendants' violation of the automatic bankruptcy stay.  (*See* Mot., Ex. 17.)  The California Complaint and the Complaint filed in this court contain nearly identical facts and allegations.  (*Compare* Compl. *with* Mot., Ex. 17.)

Defendants argue that the California case, which was dismissed for lack of subject matter jurisdiction, is a final judgment on the merits.  (*See* Mot. at 21; Reply at 8.)  Plaintiff, on the other hand, argues that the California court did not enter a final judgment.  (*See* Resp. at 14.)  In

14

the California case, Defendant Emerald moved for judgment on the pleadings, arguing, in part, that the California court did not have subject matter jurisdiction over the plaintiffs' claims because, even if the defendant violated the bankruptcy stay by improperly proceeding with the trustee sale, the plaintiffs' remedy for violation of the stay lies solely with the Bankruptcy Court. (Mot., Ex. 19 at 5–7.)  The California court, after a hearing, issued its Order granting the defendant's motion for judgment on the pleadings for lack of jurisdiction.  (*Id.*, Ex. 20.)  The California court later issued a Judgment in favor of the defendants and granted demurrer and Defendant Emerald's motion for judgment on the pleadings without leave to amend.  (Reply, Ex. C.)

It does not appear from the documents and orders in the California case provided by the defendants that the plaintiffs' claims there were dismissed on the merits.  The California Court of Appeals has held that a case dismissed after demurrer is sustained for lack of subject matter jurisdiction is not on the merits and does not have a *res judicata* effect.  *See Finnie v. Dist. No. 1-Pacific Coast Dist, Marine Eng'rs Beneficial Assn.*, 9 Cal. App. 4th 1311, 1319–20 (Cal. Ct. App. 1992).

Moreover, Defendants themselves argue that:

Marquis originally had counsel in the California State Court Case and successfully defended against Defendants' Motion to Dismiss, actually arguing the substance of the jurisdictional question.  However, it was not until well after Marquis had fired its remaining counsel, and altogether failed to retain substitute counsel, despite court orders compelling Marquis to do so, that Marquis ultimately stopped prosecuting the California State Court Case.  Indeed, the California Court ordered Marquis to obtain counsel and they failed to do so . . . . After Defendants re-asserted their Motion for Judgment on the Pleadings, and Marquis refused to respond to the Motion, the California State Court granted

15

Case 1:10-cv-02713-REB-KMT   Document 65   Filed 04/06/11   USDC Colorado   Page 16 of 32

> Defendants' Motion for Judgment on the Pleadings, finding the Court lacked
> jurisdiction to address violations of automatic stays.  Marquis cannot be rewarded
> for failing to obtain counsel in the California State Court Case, suffer an adverse
> ruling after consciously choosing not to prosecute the case, and then attempt to
> re-litigate the same, identical issues in Colorado federal court.

(Mot. at 22.)  To the extent the plaintiffs' California claims were dismissed on technical or

procedural grounds for their failure to obtain counsel and comply with court orders, the dismissal

was not a substantive dismissal on the merits.  *See Mid-Century Ins. Co. v. Superior Court for*

*Los Angeles*, 138 Cal. App. 4th 769, 776 (Cal. Ct. App. 2006).  Accordingly, Defendants' motion

for summary judgment on Plaintiff's Fifth Claim for relief on the basis of *res judicata* is properly

denied.

### b.      Fourth Claim for Relief

Plaintiff's Fourth Claim for Relief asserts Defendant Emerald violated applicable usury

laws.  (Compl. at 5.)  Defendants argue that Plaintiff "had every opportunity to assert that

Defendant Emerald violated the California usury laws [in the California case]."  (Mot. at 20.)

Defendants contend that, because Plaintiff did not previously bring his usury claim in the

California case, he is now precluded from bringing the claim here.  (*Id.* at 21.)

Though *res judicata* bars claims that could have been raised in the first proceeding

regardless of whether or not they were raised, *Torrey Pines Bank v. Superior Court* 216 Cal.

App. 3d 813, 821 (Cal. Ct. App. 1989), this bar only applies when a final judgment on the merits

has issued on matters actually litigated, *see Mattson v. City of Costa Mesa*, 106 Cal. App. 3d

441, 446 (Cal. Ct. App. 1980).  Thus, because this court has rejected Defendants' argument that

the claims previously asserted in the California case were dismissed on the merits, it must also

reject Defendants' argument that Plaintiff's usury claim is barred under *res judicata* for failure to raise it in the California proceeding.

### B.     **Younger** *Abstention Doctrine*

Though Defendants' motion to dismiss Plaintiff's claims on the basis of *res judicata* fails, this court nevertheless must abstain from the exercise of its jurisdiction if the issues raised in the complaint may be resolved either by trial on the merits in state court or by other state procedures available to the petitioner. *Younger v. Harris*, 401 U.S. 37 (1971). Defendants did not move for dismissal under the *Younger* abstention doctrine. However, it is proper for the court to address *Younger* abstention *sua sponte*. *See Morrow v. Winslow*, 94 F.3d 1386, 1392 (10th Cir. 1996) ("We are convinced that we have properly raised the abstention issue *sua sponte*.").

The *Younger* doctrine requires that federal courts refrain from interfering with state court proceedings by granting equitable relief–such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings–when such relief could adequately be sought in the state court. *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999). In addition, "[a] federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings 'involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.' " *Id.* (quoting

17

*Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)).  If these conditions are met, abstention

is nondiscretionary and must be invoked.  *Id.*

      In his First, Second and Third Claims for Relief, Plaintiff does not seek equitable relief in

this federal court that could interfere with the related Colorado proceedings.  Therefore, *Younger*

abstention is not applicable here.  This court should nevertheless abstain from hearing Plaintiff's

First, Second, and Third Claims for Relief under the *Colorado River* doctrine.

      **C.**    ***Abstention Under the* Colorado River *Doctrine***

      The *Colorado River* doctrine controls when deciding whether a district court should stay

or dismiss a federal suit pending the resolution of a parallel state court proceeding.  *See*

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976).  The

Supreme Court has held that federal courts may not use the abstention doctrines to refuse to

exercise jurisdiction over a suit for non-equitable relief that duplicated ongoing state litigation.

*See Colorado River*, 424 U.S. at 813, 816-818.  However, the Supreme Court also concluded that

judicial economy concerns may justify deferral of a federal suit when pending state litigation

will resolve the issues presented in the federal case.  *See* 424 U.S. at 817-20.  Unlike *Younger*'s

requirement to abstain under certain conditions, abstention pursuant to Colorado River is

discretionary.[2]  The justification for deferral in such an instance is to preserve judicial resources.

*Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999).  Because the *Colorado River* doctrine

---

    [2]The court may address abstention under the *Colorado River* doctrine *sua sponte*.  *See Reinhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999) (considering *Colorado River* doctrine *sua sponte* despite parties' arguments addressing only *Younger* abstention).

stems from the desire for judicial economy, rather than from constitutional concerns about federal-state comity, and because the *Colorado River* doctrine is an exception to the jurisdictional mandate from Congress, the doctrine may only be used when "the clearest of justifications . . . warrant[s] dismissal." *Id.* at 1303 (quoting *Colorado River*, 424 U.S. at 819).

Thus, while *Colorado River*'s judicial economy goals allow a federal court to avoid the "virtually unflagging obligation . . . to exercise the jurisdiction given [it]," *id.* (quoting *Colorado River*, 424 U.S. at 818), the appropriate circumstances for deferral under the *Colorado River* doctrine are "considerably more limited than the circumstances appropriate for abstention" and must be "exceptional." *Id.* (quoting *Colorado River*, 424 U.S. at 817–18). Accordingly, the court's "task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of the jurisdiction." *Id.* (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983)). Simply stated, "[d]espite the temptation for federal courts to use the doctrine as a means of stemming the rising tide of litigation, suits in federal court are not easily swept away by *Colorado River*." *Id.*

The Tenth Circuit has held that, before reaching the deferral issue, the court must determine "whether the state and federal proceedings are parallel." *Allen v. Board of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 403 (10th Cir. 1995) (quoting *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994)). Suits are parallel if "substantially the same parties litigate substantially the same issues in different forums." *Id.* (quoting Fox, 16 F.3d at 1081). The court

examines "the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings, resolving any doubt in favor of exercising federal jurisdiction." *Id.* (quoting *Fox*, 16 F.3d at 1081–82). The "exact identity of parties and issues is not required. Rather, state and federal proceedings are sufficiently parallel if 'substantially the same parties litigate substantially the same issues.' " *United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002). "Rather, the proceedings are sufficiently parallel if "the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Tyrer v. City of South Beloit*, 456 F.3d 744, 752 (7th Cir. 2006). If the cases are not parallel, the court exercises jurisdiction. *Allen*, 68 F.3d at 403. If the cases are parallel, the court must decide whether to surrender jurisdiction until the conclusion of state court proceedings. 68 F.3d at 403.

Assuming that deferral to the state court proceeding is appropriate, the court ordinarily should not dismiss a case, but rather should enter a stay pending the outcome of the state case. *See Fox*, 16 F.3d at 1083. In the event the state court proceedings do not resolve all federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without plaintiff having to file a new federal action. *Id.* Dismissal of a case under the *Colorado River* doctrine is rarely warranted. *See id.*

Though Plaintiff Hamilton is not a party to the Colorado action, he asserts he is a "successor in interest to Marquis" and is operating as the sole proprietor of the now-dissolved Marquis. (Resp. at 17.) There is no dispute that Plaintiff Hamilton was the president and sole shareholder of Marquis, the plaintiff in the Colorado proceeding. Thus, this court finds that the parties are substantially similar.

The issues are also substantially similar.  Plaintiff's First, Second, and Third claims in this case and the Third Party Complaint in the Colorado case assert claims, seeking the same relief in both cases, for fraudulent misrepresentation against Defendants Emerald, GGBC, and Gallagher (*see* Compl. at 3–4 and Mot., Ex. 7 at 16–17, 38 and 39); claims for negligent misrepresentation against Defendants Emerald, GGBC, and Gallagher (*see* Compl. at 4 and Mot., Ex. 7 at 20–21, 40–43); and claims for unjust enrichment against Defendants Emerald, GGBC, and Gallagher (*see* Compl. at 4–5 and Mot, Ex. 7 at 26–27, 47).  The language and factual allegations in the Colorado Complaint are substantially the same as in the First, Second, and Third Claims for Relief filed in this case, and the Colorado action involves the same contracts and property at issue in this case.  The events and facts underlying Plaintiff's First, Second, and Third Claims for Relief in this case and the Colorado case are the same.  For these reasons, the court finds that the proceedings are parallel.  The next step is to consider whether exceptional circumstances exist to warrant abstention or deferral under the *Colorado River* doctrine.

The Supreme Court in *Colorado River* identified several nonexclusive factors to consider in evaluating whether to defer, including 1) whether the state or federal court has assumed jurisdiction over property in dispute, 2) the inconvenience to the parties of the federal forum, 3) avoiding piecemeal litigation, and 4) the order in which the courts obtained jurisdiction. *Colorado River*, 424 U.S. at 818.  The Supreme Court in *Moses H. Cone Hosp. v. Mercury Constr.*, 460 U.S. 1 (1983), added additional factors, including the vexatious nature of the litigation, *id.* at 18 n.20, whether federal law provides the rule of decision, *id.* at 23, and the adequacy of the state court proceeding to protect the federal plaintiff's rights, *id.* at 28.

21

Determining abstention requires "a careful balancing of the important factors as they apply in a given case, with balance heavily weighted in favor of jurisdiction." *Id.* "No one factor is necessarily the determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818–19. "Only the clearest of justifications will warrant dismissal." *Moses H. Cone*, 460 U.S. at 16.

As to the first factor, jurisdiction over property, though there is a property in dispute, there is no indication that the Colorado court has exercised jurisdiction over the California property. The second factor, forum inconvenience, also does not apply here, as it would be no greater or lesser convenience to proceed in the Denver District Court case than it would be to proceed in this Court. Thus, the first two factors are neutral.

However, the remaining factors do apply. For instance, there is no question that the Plaintiff Hamilton is engaging in piecemeal litigation. There is no reason why Plaintiff Hamilton could not have asserted his individual claims in Colorado case along with the claims asserted by Marquis, the corporation for which he serves as president. Moreover, the Third-Party Complaint in the Colorado case was filed August 3, 2009, well over a year before this case was filed on November 5, 2010, and the Colorado case is substantially farther along, with a trial date of August 1, 2011. (*See* Mot., Exs. 7 and 9.)

Plaintiff Hamilton, in part, has filed this case to set aside the Trustee's Sale. The court notes that the day after the Colorado court's denial of Marquis' motion for preliminary injunction to prevent Emerald from foreclosing on the California property (*see* Mot., Exs. 8, 10),

Marquis transferred the California Property to Cambria.  (*Id.*, Ex. 11.)  The Corporation Grant

Deed contains the signature of David Hamilton as President of Cambria.  (*Id.*)  Less than an hour

later, Cambria filed a Chapter 11 Voluntary Petition in the United States Bankruptcy Court for

the Eastern District of California.  (*Id.*, Ex. 12.)  In dismissing Cambria's bankruptcy petition,

the bankruptcy judge noted that the corporation did not appear to have any creditors (*id.* at 5, ll.

10–11) and that the bankruptcy filing "smacks of bad faith" (*id.* at 4, ll. 22–23).  The court finds

Plaintiff Hamilton's filing of his federal case appears to be yet another vexatious attempt to

evade the sale of the California property since his previous machinations have proved

inadequate.

As this case is a diversity action, there is no federal law that would provide the rule of

decision.  Finally, Plaintiff cannot establish that the state proceedings will not provide an

adequate forum for his claims or the claims of Marquis, which have been pending in Colorado

for over nineteen months.  In fact, in both cases, the plaintiffs seek nearly identical relief.

(*Compare* Mot., Ex. 7 at 49 *with* Compl. at 10.)

After considering all of the factors, this court finds the that exceptional circumstances

justify a deferral by this federal court of Plaintiff's First, Second, and Third Claims for Relief

asserted against Defendants Emerald, GGBC, and Gallagher.

### D.    *Insulation of Individual Members of Limited Liability Company*

Defendants argue that Plaintiff's Third Claim for Relief for unjust enrichment is an

improper attempt to pierce the corporate veil and hold individual members of limited liability

entities responsible for what are clearly corporate obligations.  (Mot. at 25.)  Defendants argue

that the sole alleged basis for liability of the individuals is that the members were unjustly

enriched based on receiving a distribution as members of GGBC, a Colorado limited liability

company.  (*Id.*)  Plaintiff does not disagree with this assessment.  (Resp. at 19.)

    In Colorado, a limited liability company offers members and managers the limited

liability protection of a corporation.  Colo. Rev. Stat. § 7-80-705; *Sheffield Servs. Co. v.*

*Trowbridge*, 211 P.3d 714, 719 (Colo. App. 2009).  Colo. Rev. Stat. § 7-80-107(1) addresses the

"application of corporation case law to set aside limited liability" and provides:

> In any case in which a party seeks to hold the members of a limited liability
> company personally responsible for the alleged improper actions of the limited
> liability company, the court shall apply the case law which interprets the
> conditions and circumstances under which the corporate veil of a corporation may
> be pierced under Colorado law.

Colo. Rev. Stat. § 7-80-107(1).

    To determine whether it is appropriate to pierce the corporate veil, a court must make a

three-part inquiry.  *McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 74 (Colo. App. 2009).  The

first step is a determination of whether the corporate entity is the alter ego of the shareholder.  *In*

*re Phillip*, 139 P.3d 639, 644 (Colo. 2006).  An alter ego relationship exists when the corporation

is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such

unity of interest in ownership that the separate personalities of the corporation and the owners no

longer exist."  *Krystkowiak v. W.O. Brisben Co., Inc.*, 90 P.3d 859, 867 n.7 (Colo. 2004).  The

second step is a determination of whether justice requires recognizing the substance of the

relationship between the shareholder and corporation over the form because the corporate fiction

was "used to perpetrate a fraud or defeat a rightful claim."  *Contractors Heating & Supply Co.*,

24

432 P.2d 237, 239 (Colo. 1967).  Third, the court must evaluate whether an equitable result will

be achieved.  *Water, Waste & Land, Inc. v. Lanham*, 955 P.2d 997, 1004 (Colo. 1998); *see also*

*In re Phillip*, 139 P.3d at 644 (achieving an equitable result is the paramount goal of traditional

piercing of the corporate veil).

Here, the only allegation made by Plaintiff regarding the individual defendants is that

"[u]pon information and belief, instead of funding the Lakewood Property, Emerald paid about

$110,000 of the $145,064.32 to GGBC.  GGBC then paid the $110,000 to Mr. Gallagher, Ms.

Cook, Mr. Goldberg, Mr. Bushell and Mr. Crosbie."  (Compl., ¶¶ 18, 40.)  The Complaint and

the Third Claim for Relief are devoid of any factual allegations that the limited liability company

is the alter ego of the defendant members Cook, Goldberg, Bushell, or Crosbie, *see In re Phillip*,

139 P.3d at 644, or that the corporate fiction was "used to perpetrate a fraud or defeat a rightful

claim," *see Contractors Heating*, 432 P.2d at 239, nor has Plaintiff provided any evidence

demonstrating there are factual disputes on these points.

Accordingly, this court recommends that summary judgment be granted in favor of

Defendants Cook, Goldberg, Bushell, and Crosbie on Plaintiff's Third Claim for Relief.

## E. Real Party in Interest Under Rule 17(a)

Defendants argue that Plaintiff does not have standing to assert his Fourth and Fifth

Claims for Relief for violation of California usury law and for violation of the automatic

bankruptcy stay, which Defendants assert belong to Marquis and Cambria.  (Mot. at 22–25.)

Defendants contend that the only role Plaintiff Hamilton had in the transaction at issue was to

execute the Note as co-maker.  (*Id.* at 22.)  Defendants assert that Plaintiff, individually, had

nothing to do with the Trustee's Sale or the Deed of Trust because Marquis held record title to the California property that the defendants sought to foreclose.  (*Id.* at 22–23.)  Defendants also contend that because it was Cambria, and not either Plaintiff or Marquis that filed bankruptcy, Plaintiff is not the real property in interest to assert the claim for violation of the automatic stay.  (*Id.* at 24–25.)  Plaintiff asserts he has standing as a successor in interest to Marquis and Cambria, which both dissolved on January 13, 2011 (*see* Resp., Ex. J and Doc. No. 43 at 5–6), and because he is now operating as a sole proprietor.  (Resp. at 17.)

Rule 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a).  Whether a dissolved corporation has the capacity to sue is determined by the law under which it was organized.  Fed. R. Civ. P. 17(b)(2).  Because Plaintiff's corporations were formed in California, this court looks to California law.  California law provides that, after dissolution, "a corporation . . . nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations . . . ."  Cal. Corp. Code § 2010.  Moreover, after commencement of a dissolution proceeding, officers may, "in the name and on behalf of the corporation . . . collect, pay, compromise and settle debts and claims for or against the corporation [and] . . . sue, in the name of the corporation, for all sums due or owing to the corporation or to recover any of its property."  *Id.* § 2010(e).  Thus, according to California law, even though the corporation has dissolved, to the extent Plaintiff seeks redress for the corporation, he must bring suit in the name of the corporation.

26

However, the court notes that Plaintiff did sign the Note individually, as well as in his capacity as President of Marquis.  (*See* Mot., Ex. 3 at 7.)  Thus, because it appears Plaintiff may have an individual cause of action against the defendants, this court does not recommend that summary judgment be granted in Defendants' favor for Plaintiff's failure to prosecute in the name of the real property in interest.

Nevertheless, the court has determined the defendants are entitled to summary judgment on Plaintiff's Fourth and Fifth Claims for Relief on other grounds.

### F.    *Automatic Stay Under 11 U.S.C. § 362*

Defendants next argue that Plaintiff's claim for violation of the automatic bankruptcy stay should be dismissed because of the "equitable exception" to claims for such violations. (Mot. at 26–27.)  The court need not find that the defendants are entitled to an equitable exception to the stay because the court finds that the defendants did not violate the stay.

The bankruptcy court held a hearing on July 29, 2009, in which it stated the case was dismissed for the debtor corporation's failure to obtain counsel, failure to file schedules, failure to file its statement of affairs, and failure to prosecute the case.  (*See* Mot., Ex. 14.)  The bankruptcy judge noted that the corporation did not appear to have any creditors (*id.* at 5, ll. 10–11) and that the bankruptcy filing "smacks of bad faith" (*id.* at 4, ll. 22–23).  The bankruptcy court stated that the case would be dismissed and that any appeal by the corporation would not stay the dismissal order.  (*Id.* at 6, ll. 21–24; 7, ll. 3, 11–12, 14–17.)

Pursuant to 11 U.S.C. § 362(c)(2)(A) and (B), the automatic stay continues until the earliest of the time the bankruptcy case is closed or dismissed.  The bankruptcy court need not

issue a separate order to dissolve the stay.  *Norton v. Hoxie State Bank*, 61 B.R. 258, 260 (D.

Kan. 1986) (finding the issuance of such an order "would offend logic and common sense, as

once a bankruptcy proceeding is dismissed the automatic stay provision is of necessity

correspondingly vacated").

Although the bankruptcy court's written order dismissing the case was filed on July 30,

2009, the day after the hearing, the Dismissal Order makes clear that "findings of fact and/or

conclusions of law [were] orally entered on the record" on July 29, 2009.  (Mot. Ex. 15.)

Plaintiff Hamilton attended the hearing in which the bankruptcy judge stated the stay would be

lifted, and Plaintiff Hamilton voiced his understanding that any appeal would not stay the

bankruptcy court's ruling .  (Mot. Ex. 14 at 5, ll. 12–14; 7, ll. 11–18.)  As such, the automatic

bankruptcy stay was lifted as early as July 29, 2009, but no later than July 30, 2009.  11 U.S.C. §

362(c)(2)(B).  The trustee's sale of the property at issue did not occur until July 30, 2009.  (*See*

Mot. Ex. 16 at 1–2.)

Plaintiff argues that the defendants violated Bankruptcy Rule 8017.  (Resp. at 20.)

However, Bankruptcy Rule 8017 applies to appeals from an intermediate appellate tribunal such

as the district court or a bankruptcy appellate panel.  Fed. R. Bankr. P. 8017.  The rule allows a

party time to decide whether to pursue an appeal with the federal court of appeals, which

automatically stays enforcement of a district court or bankruptcy appellate panel judgment.  *Id.*

Thus, Bankruptcy Rule 8017 does not apply here.

This court finds that, because Defendants did not violate the automatic stay and there is no genuine dispute as to any material fact on this claim, Defendants should be granted summary judgment on Plaintiff's Fifth Claim for Relief.

### G.     *Claim for Violation of Usury Law*

Plaintiff alleges that the interest rate charged on the Note violates California usury law. (Compl., ¶¶ 44–47.)  Plaintiff alleges, "On September 17, 2007, Emerald's Note accrued interest at the rate of 12% per annum.  On September 1,2008 Emerald's Note begin to accrue interest at the rate of 36% per annum."  (*Id.* ¶ 20.)  Defendants argue that Plaintiff's Fourth Claim for Relief should be dismissed because Colorado law, rather than California law, controls interpretation of the Note, and that the interest rate charged did not violate Colorado law.  (Mot. at 27–28.)  Thus, the court first must determine whether the Note is controlled by Colorado law or California law.

The Note provides:  "The terms and provisions of this Note are intended to be and shall be governed, interpreted and construed pursuant to the laws of the State of Colorado applicable to promissory notes made in Colorado."  (Mot. Ex. 3, ¶ 20.)  Plaintiff attempts to argue that the Deed of Trust filed in the State of California controls the interest rate.  (Resp. at 21.)  However, the usury savings clause contained in the Deed of Trust provides: "It is expressly stipulated and agreed to be the intent of the Beneficiary and Trustor at all times to comply with the applicable law governing the highest lawful interest rate."  (Mot., Ex. 4, ¶ 9.12 [emphasis added].)  It is clear from the Note that Colorado law is to be followed, and the usury savings clause in the Deed provides applicable law—Colorado law—is the law with which the beneficiary and the trustor

should comply.  Thus, this court will analyze whether the interest rate complies with Colorado law.

Under Colorado law in effect since 1996, "[t]he parties to any . . . promissory note . . . may stipulate therein for the payment of a greater or higher rate of interest than eight percent per annum, but not exceeding forty-five percent per annum . . . ."  Colo. Rev. Stat. § 5-12-103. Thus, as the default interest rate as provided in the Note is "36% per annum" (Mot., Ex. 3, ¶ 9), well below the forty-five percent permitted under Colorado law, this court finds the rate is not unreasonable or usurious.

This court finds there is no genuine issue of disputed material fact on Plaintiff's Fourth Claim for Relief.  Accordingly, summary judgment should be granted in Defendants' favor on this claim.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that  "Defendants' Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment" (Doc. No. 23) be GRANTED in part and DENIED in part as follows:

1.     Defendants' motion for summary judgment on the basis of *res judicata* should be DENIED;

2.     Plaintiff's First, Second, and Third Claims asserted against Defendants Emerald, GGBC, and Gallagher should be deferred, under the *Colorado River* doctrine, pending resolution of the Colorado case;

3.     Defendants' motion for summary judgment should be granted in favor of

Defendants Cook, Goldberg, Bushell, and Crosbie on Plaintiff's Third Claim for

Relief; and

4.     Defendants' motion for summary judgment should be granted on Plaintiff's

Fourth and Fifth Claims for Relief.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at

31

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of April, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge